THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BTL INDUSTRIES, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**THE HONEY AND THE MOON LLC,<br>d/b/a THE SALTY MOON WELLNESS<br>CENTER and ALAINA MOLESKO**,<br><br>Defendants. | **Civil Action No. 3:25-cv-5339**<br><br>**DEMAND FOR JURY TRIAL** |

### COMPLAINT

Plaintiff BTL Industries, Inc. ("Plaintiff" or "BTL"), by its attorneys, for its Complaint against The Honey and The Moon LLC, d/b/a The Salty Moon Wellness Center ("Salty Moon") and Alaina Molesko (collectively, "Defendants"), alleges as follows:

### <u>NATURE OF THIS ACTION</u>

1.    This is a civil action by BTL arising out of Defendants' patent infringement in violation of the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; Defendants' trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a); Defendants' trademark infringement and unfair competition under the New Jersey Trade Names, Trade-Marks and Unfair Trade Practices Act § 56:1-1 *et seq.*, and the common law of the State of New Jersey.

2.    BTL and its affiliates pioneered the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In June 2018, BTL launched the ground-breaking EMSCULPT® aesthetic body-contouring device that uses this technology in the United States, after the device was cleared by the U.S. Food and Drug

Administration (FDA). BTL and its affiliates protected the EMSCULPT® device—and the technology used in the device—with numerous patents and federally registered trademarks and copyrights.

3.    Defendants promote and sell services in the United States using certain non-invasive body contouring devices that they call "EMShape NeoSculpt." On information and belief, Defendants have and continue to infringe BTL's patents directed to body-contouring methods and devices by offering, selling, and performing body-contouring services using these devices. On information and belief, Defendants advertise these body-contouring services by improperly using BTL's trademarks, and confusingly similar variations of these trademarks, in their promotional and informational materials for these body-contouring services.

4.    Defendants infringing and fraudulent conduct not only irreparably harms BTL and the goodwill associated with its brand but may also pose potentially serious health and safety consequences to the public as, on information and belief, Defendants' device is not FDA cleared. Defendants' use of "EMShape," "EMShape Neo," "EMShape NeoSculpt," and "HIFEM" are the same or confusingly similar to BTL's HIFEM®, EMSCULPT®, EMSCULPT NEO®, and EM® marks which mislead consumers into believing that Defendants' device and body-contouring services are associated and/or otherwise affiliated with BTL.

5.    BTL is thus forced to file this action to combat Defendants' unauthorized use of its patents and federally registered trademarks, as well as to protect unknowing consumers from purchasing body-contouring services performed by devices that are not FDA cleared.

6.    Defendants willful and continuing trademark infringement, unfair competition, and patent infringement should be enjoined permanently to curb the harm to BTL's reputation and the

relevant segment of the public at large. BTL has been, and continues to be, irreparably damaged as a result of Defendants' willful actions and seeks injunctive and monetary relief.

## PARTIES

7.      BTL is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

8.      On information and belief, Salty Moon is a limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of business at 390 Amwell Road, Bldg. 5, Suite 508, Hillsborough, New Jersey 08844.

9.      On information and belief, Alaina Molesko is an individual and registered agent, director, and owner of Salty Moon who resides in this District. On information and belief, Alaina Molesco's last known address is 52 9th Street, Hillsborough, NJ 08844.

## JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, 1121, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)–(b).

11.     Subject-matter jurisdiction for the trademark and unfair competition claims exists with respect to the claims asserted in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338.

12.     This Court has personal jurisdiction over Defendants because they or their employees have committed acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c), and are subject to this Court's jurisdiction under 28 U.S.C. § 1400(b).

13.     This Court has personal jurisdiction over Salty Moon because, on information and belief, it is a New Jersey limited liability company and has its principal place of business in this District.

14.     This Court has personal jurisdiction over Defendant Alaina Molesko because, on information and belief, Ms. Molesko is the owner and moving, conscious force behind Defendant Salty Moon's actions and is a resident of this District.

15.     This Court has supplemental jurisdiction over BTL's claims arising under the laws of New Jersey, pursuant to 28 U.S.C. § 1367(a), because BTL's state-law claims are so related to BTL's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

16.     Further, the acts complained of herein occurred in New Jersey.

17.     Similarly, the exercise of personal jurisdiction over Defendants comports with the due process requirements of the United States Constitution because:

   (a)     Defendants have purposefully established "minimum contacts" with the State of New Jersey and this District; and

   (b)     the exercise of personal jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

18.     Therefore, this Court has specific and general jurisdiction over Defendants.

19.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Defendants are residents of and have their principal place of business in this District and are subject to personal jurisdiction in this District.

## **BACKGROUND**

20.     BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and innovative FDA-cleared devices and developed protocols for using the technology for aesthetic therapies.

BTL denotes its products and services that feature this technology with its HIFEM® brand and other trademarks.

21.    The first such device that BTL developed was the EMSCULPT® device, a standalone, non-invasive, FDA-cleared, body-contouring device. *See* **Exhibit A** (BTL Press Release). BTL's patent-protected EMSCULPT® device uses high-intensity electromagnetic energy to induce powerful muscle contractions in a patient. BTL has developed specifically configured EMSCULPT® applicators, tailoring each type of applicator to a specific target area.



22.    The EMSCULPT® device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create repetitive muscle contractions that result in a non-invasive method of toning muscle and body sculpting. *See* https://bodybybtl.com/solutions/emsculpt-neo/ at **Exhibit B** (BTL Webpage Printout).

23.     In June 2018, BTL received clearance from the FDA for its EMSCULPT® device with large applicators and began to sell the device in the United States for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, and for strengthening, toning, and firming of the buttocks and thighs. *See Id.* In October 2018, BTL received FDA clearance for an additional indication for the improvement of muscle tone and firmness and for strengthening muscles in arms. *Id.* In July 2019, BTL received FDA clearance for the EMSCULPT® device with both large and small applicators for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, strengthening, toning, and firming of the buttocks, thighs, and calves, as well as improvement of muscle tone and firmness for strengthening muscles in arms. *Id.* The smaller applicators are intended for smaller treatment areas.

24.     BTL markets and distributes its non-invasive aesthetic body-contouring EMSCULPT® device to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMSCULPT® devices that incorporate its proprietary technology, muscle toning protocols, and applicators in the United States.

25.     BTL's EMSCULPT® device created a new market in which it quickly became the innovative industry leader. Before BTL launched the EMSCULPT® device in 2018, no other product used high-intensity, focused, electromagnetic technology to tone and firm muscle for non-invasive, aesthetic body contouring.

26.     The aesthetic industry has recognized BTL's innovation, hailing it as having taken "the aesthetics industry by storm;" praising BTL as being the first to apply high-intensity, focused,

electromagnetic energy technology for aesthetics; and lauding the EMSCULPT® device as having "transformed treatment protocols." *See* **Exhibit A**.

27.     BTL's EMSCULPT NEO® device is FDA-cleared and uses high-intensity, electromagnetic energy to induce powerful muscle contractions—unachievable through typical voluntary contractions—to contour an individual's physique. The EMSCULPT NEO® device is currently cleared by the FDA as a non-invasive treatment for the abdomen, buttocks, arms, calves, and thighs. BTL markets and distributes its EMSCULPT NEO® device to healthcare professionals.

28.     The EMSCULPT NEO® device has been a breakthrough development in the aesthetics industry, receiving plaudits from some of the industry's largest companies. For example, the EMSCULPT NEO® device won Dermascope.com's Aesthetician's Choice Award in 2022 and Glamour magazine described the device as "revolutionary." *See* **Exhibit C** (Dermascope and Glamour Awards).

29.     BTL's market success and superior performance are by-products of its technological innovations over the past several decades. BTL continues to implement these innovations today. BTL has protected its investment into its innovations and its brand with patents and trademarks. BTL lists the patents that cover its products, including EMSCULPT®, on its website at www.btlnet.com/patents.

### A.     The Asserted Patent

30.     On November 19, 2019, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 10,478,634 (the "'634 Patent"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field" to BTL Medical Technologies S.R.O. A true and correct copy of the '634 Patent is attached hereto as **Exhibit D**. The '634 Patent

was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '634 Patent, including equitable relief and damages.

    **B.**    **BTL's Trademarks**

    31.    BTL uses and licenses registered and unregistered trademarks and trade dress to market its aesthetic equipment and treatments in the United States including the following federally registered marks (the "BTL Trademarks"):

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| 5,688,619 | **HIFEM** | Mar. 5, 2019 | Sept. 19, 2017 | Class 10: Medical and aesthetic apparatus and instruments generating electromagnetic, magnetic, electrical, mechanical, radiofrequency or thermal energy for use in skin treatment procedures; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, treatment of pigmentation spots, increase in muscle volume, increase in number of muscle fibres and increase in muscle tonus; medical apparatus and instruments for the treatment of cellulite; therapeutic facial masks; facial toning machines for cosmetic use; electric stimulation and magnetic stimulation apparatus for physical therapy purposes for the treatment of nerve and |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | muscle pain and elimination of muscular spasms; gynecological and urological apparatus and instruments, namely for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment.<br><br>Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical removal of body cellulite. |
| 5,572,801 | **EMSCULPT** | Oct. 2, 2018 | Sept. 29, 2017 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; above medical apparatuses with exception for the treatment of the nasopharynxs including inhalers and nasal irrigators; massage apparatus; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynaecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment |
| 6,069,279 | **EMSCULPT** | June 2, 2020 | Sept. 29, 2017 | Class 44: medical services; gynecology services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; removal of body cellulite |
| 5,915,636 | **EM** | Nov. 19, 2019 | Jan. 8, 2019 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence.<br><br>Class 44: Health assessment services; medical services, namely, providing treatment for patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; gynecological services; |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | urology medical care services; rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and surgical body shaping services; medical services, namely, removal of body cellulite; physical therapy services. |
| 6,206,098 | **EM** | Nov. 24, 2020 | July 2018 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence. Class 44: Health assessment services; medical services, namely, providing treatment for patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; gynecological services; urology medical care services; rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and surgical body shaping services; medical services, namely, |

11

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | removal of body cellulite; physical therapy services. |
| 6,373,947 | **EMSCULPT NEO** | June 1, 2021 | Oct. 17, 2020 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment of sexual dysfunction, gynecological treatment and pelvic floor treatment. Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical services, namely, removal of body cellulite. |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| 4,750,101[1] |  | June 9, 2015 | Jan. 24, 2014 | Class 10: Physiotherapy apparatus in the nature of apparatus for electrotherapy, laser therapy, ultrasound therapy, magnetotherapy, and shockwave therapy, all for electrical nerve and muscle stimulation, infrared heat, wound healing, pain therapy, and treatment of inflammation; body rehabilitation apparatus for medical purposes; esthetic massage apparatus; hydrotherapy massage apparatus; medical and veterinary diagnostic apparatus and instruments, namely, electrocardiographs, heart monitors, spirometers, and blood pressure monitors; Medical devices for nonsurgical cosmetic treatments; medical devices for body toning and body shaping, tightening of skin, treatment of skin laxity, wrinkles, rhytides, and cellulite, and fat removal; lymphatic drainage equipment, namely, massage apparatus and lasers for medical use |

32.    BTL has continuously and exclusively used the BTL Trademarks and has never abandoned them. The BTL Trademarks are validly registered in the United States and are in full force and effect. True and correct copies of the BTL Trademark registrations, obtained from the

---

[1] This registration hereinafter referred to as the "BTL Logo." BTL Logo is not part of the BTL Trademarks being asserted in this Complaint.

Trademark Status Document Retrieval ("TSDR") database of the USPTO, are attached to this Complaint as **Exhibit E**. These registrations constitute *prima facie* evidence of validity of the BTL Trademarks and of BTL's exclusive right to use the BTL Trademarks under 15 U.S.C. § 1057(b).

33.    The BTL Trademarks therefore perform an important source-identifying function for BTL's aesthetic body-contouring devices like the EMSCULPT® and EMSCULPT NEO® and associated treatment services. The BTL Trademarks signify to purchasers that the body-contouring devices come from BTL, and the body-contouring services are rendered by BTL's devices and administered by BTL-trained and BTL-authorized service providers. The BTL Trademarks are inherently distinctive and are associated with BTL's innovative aesthetic body-contouring devices that have acquired considerable brand loyalty through BTL's sales and promotion, and direct word-of-mouth promotion by consumers. In addition, BTL has expended significant time, money, and resources in developing, marketing, advertising, promotion, and selling its products and services under its trademarks, including the BTL Trademarks, in the United States. The market reputation and consumer goodwill associated with the BTL Trademarks are of significant value to BTL.

### C.    Defendants' Unlawful Conduct

34.    On information and belief, Defendants have since at least November 7, 2024, advertised body-contouring services using the "EMShape NeoSculpt," a body-contouring device (the "Accused Device") and using the mark HIFEM.

35.    On information and belief, Defendants' activities are ongoing, despite attorneys for BTL informing Defendants that their activities violate BTL's rights on multiple occasions.

36.    On November 7, 2024, attorneys for BTL sent Defendants a letter via email informing them of their infringing conduct and BTL's intellectual property rights.

37.     Ms. Molesko informed BTL's attorneys that Defendants were represented by Mark Wetter, and on January 8, 2025, attorneys for BTL sent a follow-up letter via email to Mr. Wetter.

38.     On February 11, 2025, Mr. Wetter informed BTL's attorneys that he would "get back" with them as Mr. Wetter had "been away."

39.     On March 5, 2025, Defendants informed BTL's attorneys that Defendants would no longer be using representation and Defendants "will continue operating [their] business as usual." *See* **Exhibit F** (Letters and Emails).

40.     On information and belief, the Accused Device implements the same or substantially the same technology as the '634 Patent.

41.     On information and belief, the Accused Device includes or performs each and every limitation of at least one claim of the Asserted Patent, either literally or under the doctrine of equivalents. By offering services using, making, offering to sell, selling, and/or importing into the United States the Accused Device, Defendants have directly infringed, and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Asserted Patent under 35 U.S.C. § 271(a).

42.     On information and belief, Defendants have been aware of the Asserted Patent since at least March 5, 2025, when BTL informed Defendants via email of their infringement of the Asserted Patent. Additionally, BTL's "Patent Labeling" webpage (https://www.btlnet.com/patents) also lists the Asserted Patent and identifies it as covering the EMSCULPT® and EMSCULPT NEO® devices.

43.     On information and belief, Defendants have been aware of BTL's specific infringement allegations regarding the Asserted Patent since at least March 7, 2025, when BTL transmitted a copy of the complaint it planned to file in this matter.

44.    Defendants have used and continue to use the BTL Trademarks, and confusingly similar variations of the BTL Trademarks, in their informational and promotional materials for their body-contouring services using the Accused Device.

45.    Specifically, the images below are representative of Defendants' infringing conduct:







46.    On information and belief, Ms. Molesko is the moving, conscious, and active force behind Salty Moon's infringing conduct. For example, on information and belief, Ms. Molesko is the owner and director of Salty Moon.

47.    Ms. Molesko, as the sole owner and director of Salty Moon, is and has been the individual possessing sole decision-making authority over the content of Salty Moon's technical, information, and promotional materials for the Accused Device.

48.    On information and belief, Ms. Molesko has and continues to willfully and maliciously serve as the moving, conscious, and active force behind Salty Moon's infringing conduct—not least because Ms. Molesko has had constructive knowledge of BTL's intellectual property at least since November 7, 2024, when counsel for BTL informed Defendants via email of their potential infringement of BTL's intellectual property.

49.    Defendants' use of "EMShape," "EMShape Neo," "EMShape NeoSculpt," and HIFEM is without BTL's authorization.

50.    Defendants' advertising includes the claims that the Accused Device uses "high-intensity focused electromagnetic (HIFEM) energy to tone muscles and reduce stubborn fat." Defendants' advertising further claims that the Accused Device is "[a] clinically proven, FDA-cleared treatment." On information and belief, Defendants have not performed clinical studies

demonstrating these results nor have any clinical studies by any other entity using the Accused Device been performed. Rather, these clinical study results are taken from BTL's own clinical studies using its EMSCULPT® and EMSCULPT NEO® devices.

51. On information and belief, the Accused Device is not an authentic BTL device. On information and belief, Defendants' Accused Device uses time-varying magnetic fields that are applied to a patient's skin and held there using a flexible belt attached to an applicator that includes a magnetic field generating coil. On information and belief, the magnetic field generating coil generates a time-varying magnetic field and the device applies a magnetic flux of 50 T cm$^2$ to 1,500 T cm$^2$ and causes muscle contractions.

52. On information and belief, the Accused Device is not FDA-cleared.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,478,634

53. BTL repeats and re-alleges paragraphs 1–52 as if fully set forth herein.

54. The '634 Patent is directed towards a method for toning muscles in a patient using time-varying magnetic fields. Exemplary Claim 1 of the '634 Patent recites:

A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:

placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;

coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing;

providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field; and

applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region,

wherein the time-varying magnetic field is applied to the body region with a magnetic

flux density sufficient to cause a muscle contraction in the body region.

55.    Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '634 Patent by making, using, offering to sell, selling, or importing the Accused Device in the United States.

56.    Defendants have and continue to promote and perform the preamble of claim 1 of the '634 Patent, which recites "[a] method for toning muscles in a patient using time-varying magnetic fields."

57.    Advertising and promotional information for the Accused Device indicates that the body-contouring services performed by the Accused Device tone a patient's muscles using time-varying magnetic fields.

58.    For example, in the below screenshot taken from Defendants' website, the "EMShape NeoSculpt" device (on information and belief, the Accused Device) uses "high-intensity focused electromagnetic (HIFEM) energy to tone muscles and reduce stubborn fat." On information and belief, this language indicates that the Accused Device tones a patient's muscles.



59.     On Defendants' website under the "How to Book" page, language used indicates that the body-contouring services performed by the Accused Device use magnetic fields. For example, the following screenshot taken from the "How to Book" page states that the Accused Device using "advanced electromagnetic technology to enhance and define specific areas, resulting in a more sculpted appearance." On information and belief, this language indicates that the Accused Device uses magnetic field to tone a patient's muscles.



60.     Additionally, Defendants indicated their Accused Device was obtained through Rejuva Fresh and is the model identified as the "EMShape Neo Fit Body Sculpting Machine."

| U.S. Patent No. 10,478,634 | The Accused Device |
|---|---|
| 1. [p] A method for toning muscles in a patient using time-varying magnetic fields, the method comprising: | The manual for this device indicates this device uses high intensity electromagnetic technology in methods to reduce fat and build muscle, resulting in "a toned and contoured body.  Thank you for choosing REJUVA FRESH EMShape Neo Fit Body Sculpting Machine. This device reduces fat and builds muscle, providing a safe and effective alternative to risky surgeries. Ideal for those seeking a toned and contoured body without lengthy recovery periods.  Achieve your dream body efficiently and effectively with EMShape Neo Fit! The treatment delivers high intensity focused electromagnetic muscle stimulation, resulting in enhanced muscle building and fat reduction. |

Using advanced magnetic wave technology, double layer coils send pulsed magnetic waves into the muscle tissue. In just 30 minutes, thousands of muscle contractions are induced – providing an intense workout that goes beyond traditional exercise methods. Achieve your desired results efficiently and effectively.

The vigorous training remodels deep muscles, increases myofibrils, and produces new collagen chains, resulting in higher muscle density and volume.

The Rejuva Fresh Landing Page for the EMShape Neo Fit Body Sculpting Machine also indicates this device "successfully firms and tones multiple body areas." (https://rejuvafresh.com/products/emshape-neo-fit-body-sculpting-machine)

This device successfully firms and tones multiple body areas, while strengthening muscle. Ideal for those seeking a toned and contoured physique without lengthy recovery periods. Achieve your dream body efficiently and effectively with EMShape® Neo Fit!

The treatment delivers high intensity focused electromagnetic muscle stimulation, resulting in enhanced muscle strengthening, firming and toning. With just one 30-minute session, you can get the equivalent of many, many muscle exercises.

Using advanced magnetic wave technology, magnetic coils send pulsed magnetic waves into the muscle tissue. In just 30 minutes thousands of muscle contractions are induced - providing an intense workout that goes beyond traditional exercise methods. Achieve your desired results efficiently and effectively.

The vigorous training remodels deep muscles, increases myofibrils, and produces new collagen chains, resulting in higher muscle density and volume.

Rejuva Fresh's webpage provides information on various product lines and indicates the EMShape brand machines utilize "[h]igh intensity magnetic energy in the form of a pulsed magnetic field [] applied to the targeted treatment area." (https://rejuvafresh.com/collections/emshape-and-emslim-machines). This pulsed magnetic field provides a magnetic field that varies over time – a time-varying magnetic field.

The manual for this device also indicates these magnetic fields can vary in intensity and frequency over time, providing time varying magnetic fields.

1. Select the type of treatment. This is located at the bottom of the interface:
【HIIT】：Basic training for beginners
【OBESITY】：Adaptation training.
【SLIGHTLY FAT】：Preliminary training
【SHAPING】：Advanced training
【LOSE WEIGHT】：Professional training
NOTE: Each mode contains 6 different frequencies that automatically switch.
    The first minute of each mode is warm-up.

2. The recommended intensity starts from 8% (weak) to 100% (strong).
【Intensity】：Strength intensity，click【-】and【+】to adjust.
NOTE: Set the intensity before the start of treatment.
    We recommend choosing the intensity lower and should be gradually
    increased according to the patient's ability to withstand it.
1. Manually adjust the frequency on the interface same as in the image above.
【F1】：Frequency 1, the intensity range is 3HZ (weak) to 150Hz(strong);
【F2】：Frequency 2, the intensity range is 3HZ (weak) to 150Hz(strong);
【F3】：Frequency 3, the intensity range is 3HZ (weak) to 150Hz(strong).

NOTE: Before the start of treatment, set the frequency parameters according to the
required frequency. F1 frequency works for 5 minutes, F2 frequency works for 1
minute, F3 frequency works for 5 minutes, and F1, F2, and F3 frequencies are
cycled in sequence.

2. The recommended intensity is from 8% (weak) to 100% (strong).
【Intensity】：Strength intensity，click【-】and【+】to adjust.
NOTE: Set the intensity before the start of treatment.
    We recommend choosing the intensity lower and should be gradually
    increased according to the patient's ability to withstand it.

On information and belief, discovery will show that the EMShape Neo Fit Body Sculpting Machine includes the claim limitation: "[a] method for toning muscles in a patient using time-varying magnetic fields." Rejuva Fresh's webpage provides information on various product lines and indicates the technology of the EMShape, machines all work with high intensity magnetic energy in the form of a pulsed magnetic field applied to target treatment areas. (https://rejuvafresh.com/collections/emshape-and-emslim-machines).

On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Device's magnetic fields are time-varying.

61.    On information and belief, Defendants have and continue to promote and perform the claimed step of "placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock."

62.     On information and belief, the Accused Device includes at least one applicator comprising a magnetic field generating coil.

63.     On information and belief, Defendants place these applicators on the skin of a patient's abdomen or buttocks or over clothing covering these body regions.





64.     On information and belief, advertising and promotional materials depict the Accused Device's applicators attached to the skin of patients at various body regions including the abdomen or buttock.

| U.S. Patent No. 10,478,634 | The Accused Device |
|---|---|
| [a] placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock; | On information and belief, the treatment handles for the EMShape Neo Fit Body Sculpting Machine house magnetic field generating coils. The manual for this device indicates the device comes with treatment handles. To be confirmed by inspection, these handles are applicators that house magnetic field generating coils. The manual for this device indicates this device includes at least two applicators, and therefore at least two magnetic field generating coils. The manual also indicates two of these treatment applicators are flat. The Rejuva Fresh Landing Page for this device indicates this device has "magnetic coils [to] send pulsed magnetic waves into the muscle tissue." Rejuva Fresh Landing Page for the EMShape Neo Fit Body Sculpting Machine (https://rejuvafresh.com/products/emshape-neo-fit-body-sculpting-machine). |

About the Technology:

- Using advanced magnetic wave technology, magnetic coils send pulsed magnetic waves into the muscle tissue. In just 30 minutes thousands of muscle contractions are induced - providing an intense workout that goes beyond traditional exercise methods. Achieve your desired results efficiently and effectively.

| No. | Item | Quantity | Image |
|---|---|---|---|
| 1 | Body | 1 Set | |
| 2 | Handle | 2 | |



II.3 Back view

The manual for this device indicates the handle applicators of this device are positioned during treatment according to images depicting the handle applicators, and the magnetic field generating coils arranged within, being positioned on a body region of the patient being treated in contact with a patient's skin or clothing.



The Rejuva Fresh Landing Page for this device also provides resources on how to use the EMShape Neo Fit Body Sculpting Machine, including how to fix the handle proximate to the body region of the patient being treated. Rejuva Fresh Landing Page for the EMShape Neo Fit Body Sculpting Machine (https://rejuvafresh.com/products/emshape-neo-fit-body-sculpting-machine) (citing https://youtu.be/5eiAjdAEFD4).



The manual for this device also indicates the user interface of this device prompts operator users to indicate the body regions being treated, including the abdomen and the hips/buttocks.

| | On information and belief, discovery will show that the EMShape Neo Fit Body Sculpting Machine includes the claim limitation: "placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock." Rejuva Fresh's webpage providing information on various product lines indicates the technology of the EMShape machines all work with high intensity magnetic energy in the form of a pulsed magnetic field applied to target treatment areas. (https://rejuvafresh.com/collections/emshape-and-emslim-machines). |

On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Device's applicators contain magnetic field generating coils.

65.    Defendants have and continue to promote and perform the claimed step of "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing." On information and belief, the Accused Device's applicators attached to the skin of patients using an adjustable flexible belt at various body regions including the abdomen or buttock.





(https://thesaltymoonspa.com/how-to-book; last visited March 6, 2025)

| U.S. Patent No. 10,478,634 | The Accused Device |
|---|---|
| [b] coupling the first applicator to the patient with an adjustable flexible belt so that the belt | The manual for this device indicates that the device comes with treatment handles and belt straps. The manual also indicates this device includes at least two applicators. The Rejuva Fresh Landing Page for this device indicates this device has "magnetic coils [to] send pulsed magnetic waves into the muscle tissue." Rejuva Fresh Landing Page for the EMShape Neo Fit Body Sculpting Machine (https://rejuvafresh.com/products/emshape-neo-fit-body- |

| holds the first applicator to the patient's skin or clothing; | sculpting-machine). Both the manual and the Landing Page show at least two applicators, one of which constitutes the first applicator that comprises the first magnetic field generating coil. |

| No. | Item | Quantity | Image |
|-----|------|----------|-------|
| 1 | Body | 1 Set | |
| 2 | Handle | 2 | |
| 3 | Belt | 3 | |

The manual for this device indicates the handle applicators of this device are positioned during treatment according to images depicting the handle applicators being positioned on a body region of the patient using the belt straps to hold the applicators to the patient's skin or clothing.



The Rejuva Fresh Landing Page for this device also provides resources on how to use the EMShape Neo Fit Body Sculpting Machine, including how to fix the handle proximate to the body region of the patient being treated using the straps. (https://rejuvafresh.com/products/emshape-neo-fit-body-sculpting-machine) (citing https://youtu.be/5eiAjdAEFD4).



On information and belief, discovery will show that the EMShape Neo Fit Body Sculpting Machine includes the claim limitation: "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing."

66.    On information and belief, Defendants have and continue to promote and perform the claimed step of "providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field."

67.     On information and belief, a reasonable opportunity for further investigation and discovery will show that the method of operation of the Accused Device includes providing a power supply which transmits energy to the applicators, via an energy source and energy storage device, which in turn generates time-varying magnetic fields.

68.     On information and belief, the Accused Device includes a power supply which transmit energy to the applicators, which in turn generate time-varying magnetic fields.

| U.S. Patent No. 10,478,634 | The Accused Device |
|---|---|
| [c] providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field; and | On information and belief, a reasonable opportunity for further investigation and discovery will show that the method of operation of this device includes providing a power supply which transmits energy to the applicator(s), via an energy source and energy storage device, which in turn generates time-varying magnetic fields.<br><br>The manual and Rejuva Fresh Landing Page for this device indicates the device comes with a power cord that connects to a power supply which, on information and belief, supplies power to the magnetic coils housed in the applicators so that they may generate time-varying magnetic fields. (https://rejuvafresh.com/products/emshape-neo-fit-body-sculpting-machine).<br><br> |

The manual and Rejuva Fresh Landing Page for this device also depict power connections between a main body of the device and each of the separate handle applicators, providing power to the magnetic coil in each separately. (https://rejuvafresh.com/products/emshape-neo-fit-body-sculpting-machine) (citing https://youtu.be/5eiAjdAEFD4).



1. Ensure that the power supply is stable. If the local power supply voltage is unstable, it is recommended that the user add a regulated power supply with matching power.
2. The power cord of the socket is required to be more than 1.5 square meters.

| Machine Power | 5600 W |
|---|---|
| Voltage | 100 V/110 V/ 220 V<br>Voltage selected according to your region |
| Screen Size | 10.4 in |
| Frequency of Vibration | 1~150 Hz |
| Cooling System | Air Cooling |
| Machine Size | 40 x 48 x 38 cm |
| Machine Weight | 38 Kg |

Technologies: HICMMT

Power: 5600W (relative)

Voltage: Wide voltage 1100V/120V/220V

Programs: Auto & manual

Modes: Stretching to warm up, deepen exercise, activate muscle, strengthen muscle, strong fat burning, relief

Screen Size: 10.4in

Frequency of Vibration: 1-150Hz

Pulse width: ~310us+/- 10%

Cooling System: Air Cooling

Transport package: durable metal air flight box

Machine Size: 40*48*38cm

Machine Weight: 30 kg

Package Size: 47*66*63cm

Package Weight: 35.5 kg



multi-functional fat reduction and body shaping machine

Connect the power cord and turn on the switch

On information and belief, discovery will show that the EMShape Neo Fit Body Sculpting Machine includes the claim limitation: "providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field." Rejuva Fresh's webpage providing information on various product lines indicates the technology of the EMShape machines all

| | |
|---|---|
| | work with high intensity magnetic energy in the form of a pulsed magnetic field applied to target treatment areas. (https://rejuvafresh.com/collections/emshape-and-emslim-machines). |

69.    Defendants have and continue to promote and perform the claimed step of "applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region." On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Device's magnetic field generating coils are configured to generate a time-varying magnetic field with a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the magnetic field generating coils and are of an area sufficient to result in a magnetic fluence in the range of 50 T cm$^2$ to 1,500 T cm$^2$.

| U.S. Patent No. 10,478,634 | The Accused Device |
|---|---|
| [d] applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region, | On information and belief, discovery will show that the magnetic field generating coils of the EMShape Neo Fit Body Sculpting Machine are configured to generate a time-varying magnetic field with a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the magnetic field generating coils and are of an area sufficient to result in a magnetic fluence in the range of 50 T cm$^2$ to 1,500 T cm$^2$ applied to a body region. Rejuva Fresh's webpage providing information on various product lines indicates the EMShape brand machines deliver more than twice the magnetic flux density as compared to the EMSlim machines. (https://rejuvafresh.com/collections/emshape-and-emslim-machines). Previously inspected EMSlim machines included magnetic field generating coils that produced a magnetic flux density in a range including at least 0.7 Tesla. Accordingly, EMShape machines, including the EMShape Neo Fit Body Sculpting Machine, that produce more than twice 0.7 Tesla still fall within the range of 0.1 Tesla to 7 Tesla on a surface of the magnetic field generating coil.

Firstly, we are proud to offer the top of the line EMShape® Neo brand, which uses our exclusive HICMMT (high concentrated magnetic muscle training) tech. HICMMT delivers more than twice the magnetic flux density as compared with the HIEMT (high intensity electro-magnetic technology) used by EMSlim and countless no brand machines.

On information and belief, discovery will further show that the area of the magnetic field generating coils of this device are sufficient to result in a magnetic fluence in the range of 50 T·cm$^2$ to 1,500 T·cm$^2$, as will be shown through an inspection of this device.

On information and belief, discovery will show that the EMShape Neo Fit Body Sculpting Machine includes the claim limitation: "applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region." Rejuva Fresh's website describes the EMShape machines as using the same pulsed magnetic field technology for treatment. (https://rejuvafresh.com/collections/emshape-and-emslim-machines). Previously inspected EMSlim and EMSzero machines included applying a maximal peak-to-peak magnetic flux density generated by the magnetic field generating coil of appropriate area to produce the claimed range of magnetic fluence, supporting the conclusion that EMShape machines, including the EMShape Neo Fit Body Sculpting Machine, share the same structure and function. |

70.    Defendants have and continue to promote and perform the claimed step "wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region." On information and belief, advertising and promotional materials for the Accused Device promote and advertise the Accused Device ability to generate magnetic fields sufficient to cause muscle contractions in the targeted body region.



| U.S. Patent No. 10,478,634 | The Accused Device |
|---|---|
| [e] wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region. | See Limitation [1.d] above.<br><br>The manual for this device indicates the handle applicators of this device are positioned during treatment according to images depicting the handle applicators, and the magnetic field generating coils arranged within, being secured proximate to a body region of the patient being treated. |



The Rejuva Fresh Landing Page for this device also provides resources on how to use the EMShape Neo Fit Body Sculpting Machine, including how to fix the handle proximate to the body region of the patient being treated. Rejuva Fresh Landing Page for the EMShape Neo Fit Body Sculpting Machine (https://rejuvafresh.com/products/emshape-neo-fit-body-sculpting-machine) (citing https://youtu.be/5eiAjdAEFD4).





Arm muscles and toning



Tighten and shape the back legs

Muscle building and shaping of the front legs

Buttocks are tightened and contoured

The Rejuva Fresh Landing Page for the EMShape Neo Fit Body Sculpting Machine also indicated the magnetic coils in the handle applicators send magnetic waves into muscle tissue to induce thousands of muscle contractions. (https://rejuvafresh.com/products/emshape-neo-fit-body-sculpting-machine).

Using advanced magnetic wave technology, magnetic coils send pulsed magnetic waves into the muscle tissue. In just 30 minutes thousands of muscle contractions are induced - providing an intense workout that goes beyond traditional exercise methods. Achieve your desired results efficiently and effectively.

Accordingly, the manual and Rejuva Fresh Landing Page for this device indicates the handle applicators apply the time-varying magnetic field to the body region of the patient being treated with a magnetic flux density sufficient to cause a muscle contraction in that body region. On information and belief, discovery will show the magnetic field generating coils within the handle applicators generate a magnetic flux density of sufficient strength to cause muscle contractions. Rejuva Fresh's webpage providing information on various product lines indicates the EMShape brand machines deliver more than twice the magnetic flux density as compared to the EMSlim machines. (https://rejuvafresh.com/collections/emshape-and-

| |
|---|
| emslim-machines) (citing https://youtu.be/lhy69lVCcVM) (showing the strong effect of the magnetic flux density produced by the EMS Body Sculpting machines). Previously inspected EMSlim and EMSzero machines included applying a maximal peak-to-peak magnetic flux density generated by the magnetic field generating coil of appropriate area to produce the claimed range of magnetic fluence, supporting the conclusion that EMShape machines, including the EMShape Neo Fit Body Sculpting Machine, share the same structure and function. <br><br> On information and belief, discovery will show that the EMShape Neo Fit Body Sculpting Machine includes the claim limitation: "the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region." |

71.     Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '634 Patent by making, using, offering to sell, or importing at least the Accused Device in the United States. On information and belief, Defendants were aware of the '634 Patent since before the filing of this Complaint. On information and belief, Defendants have known that the Accused Device is designed for a use that infringes one or more claims of the '634 Patent, and the Accused Device lacks a substantial non-infringing use. On information and belief, Defendants have, and will continue to, intentionally directly infringe with knowledge of the '634 Patent and knowledge that their acts are directly infringing.

72.     Defendants' direct infringement of the '634 Patent has been, and continues to be, willful. On information and belief, Defendants have been aware of the '634 Patent before the filing of this Complaint and have infringed the '634 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

73.     Defendants' direct infringement of the '634 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

74.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '634 Patent.

## COUNT II: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

75.    BTL repeats and realleges paragraphs 1–74 as if fully set forth herein.

76.    BTL owns exclusive rights to the BTL Trademarks in the United States. The United States trademark registrations for the BTL Trademarks are in full force and effect.

77.    Defendants, without BTL's permission or consent, have used and continue to use the BTL Trademarks and confusingly similar variations thereof in connection with the advertising, promotion, sale, and offer for sale of body contouring services using the Accused Device.

78.    On information and belief, Defendants' unauthorized use of the "EMShape," "EMshape Neo," "EMShape NeoSculpt," and "HIFEM" marks to advertise and promote body contouring services using the Accused Device has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the Accused Device and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Device and body-contouring services.

79.    On information and belief, Defendants' unauthorized use of the HIFEM mark—which is identical to BTL's HIFEM® federally registered trademark—to advertise and promote body-contouring services using the Accused Device has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the Accused Device and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Device and body-contouring services.

80.    On information and belief, Defendants' unauthorized use of the "EMShape," "EMshape Neo," and "EMShape NeoSculpt," marks—which are confusingly similar variations of BTL's EM®, EMSCULPT®, and EMSCULPT NEO® federally registered trademarks—to advertise and promote body-contouring services using the Accused Device has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the

Accused Device and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Device and body-contouring services

81.     Defendants have had knowledge of BTL's rights in the BTL Trademarks since before the filing of this Complaint. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in each of the EMSCULPT® trademarks since at least the dates the registration for each of these trademarks first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in the EMSCULPT NEO® trademark since at least the date the registration for this trademark first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in each of the EM® trademarks since at least the dates the registration for each of these trademarks first issued to BTL.  Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in the HIFEM® trademark since at least March 5, 2019—the date the registration for the HIFEM® trademark first issued to BTL. Moreover, a straightforward Google search for "BTL" and "trademarks" lists the BTL Trademarks as associated with BTL. https://www.trademarkia.com/company-btl-industries-inc-3618568-page-2-2.

82.     The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

83.     Defendants' trademark infringement has damaged, and continues to damage, BTL in an amount yet to be determined, but of at least the profits that Defendants have made as a result of its infringement, plus the cost of this action. Defendants' trademark infringement is the direct and proximate cause of BTL's damages.

84.     BTL is entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in any further such acts in violation of federal trademark law.

## COUNT III: FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING UNDER 15 U.S.C. § 1125

85.     BTL repeats and re-alleges paragraphs 1–84 as if fully set forth herein.

86.     Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell body-contouring services using the Accused Device has and is likely to confuse, mislead, or deceive as to the origin and quality of these body-contouring services and the Accused Device, their association with BTL and BTL's EMSCULPT® and EMSCULPT NEO® devices, and the sponsorship or approval by BTL of these body-contouring services and the Accused Device.

87.     Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell body-contouring services using the Accused Device misrepresents the nature, characteristics, qualities, and geographic origin of these body-contouring services and the Accused Device).

88.     Defendants' actions constitute a willful violation of 15 U.S.C. § 1125.

89.     Defendants' actions described above have injured and, if permitted to continue, will continue to harm BTL's business and the goodwill associated with its brand, as well as BTL's reputation for providing high-quality and safe body-contouring aesthetic devices and procedures subject to strict quality control standards that have been cleared by the FDA.

90.     BTL has no adequate remedy at law, and if Defendants' actions are not enjoined, BTL will continue to suffer irreparable harm to its reputation and the goodwill of the BTL brand.

## COUNT IV: FEDERAL TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114

91.     BTL repeats and re-alleges paragraphs 1–84 as if fully set forth herein.

92.     Defendants use a mark identical to BTL's HIFEM® federally registered trademark. Defendants have used the identical mark in commerce in connection with the advertising and promotion of body-contouring services using the Accused Device. Defendants have knowingly and intentionally used the identical counterfeit mark.

93.     BTL has not authorized Defendants' use of the BTL HIFEM® Trademark to advertise and promote body-contouring services using the Accused Device.

94.     Defendants' unauthorized use of the BTL HIFEM® Trademark is likely to (a) cause the public and consumers to believe that Defendants' body-contouring services using the Accused Device are authorized by and/or affiliated with BTL; and (b) result in Defendants unfairly benefitting from the reputation and substantial goodwill of BTL and the BTL Trademarks to the substantial and irreparable injury of consumers and BTL.

95.     Defendants' acts as set forth herein constitute trademark counterfeiting in violation of 15 U.S.C. § 1117(b)(1) and reflect Defendants' intent to exploit the goodwill and strong brand recognition associated with the BTL HIFEM® Trademark.

## COUNT V: TRADEMARK COUNTERFEITING VIOLATION UNDER THE NEW JERSEY TRADE NAMES, TRADE-MARKS AND UNFAIR TRADE PRACTICES ACT, N.J. STAT. ANN. § 56:3-13.16

96.     BTL repeats and re-alleges paragraphs 1–84 as if fully set forth herein.

97.     Defendants have used, without BTL's consent, reproductions, counterfeits, copies, or colorable imitations of BTL's HIFEM® Trademark in connection with the sale, distribution, offering for sale or advertising of counterfeit products in New Jersey, which are likely to cause confusion, mistake or to deceive consumers, the public or the trade as to their source of origin.

98.     Defendants' acts as set forth herein constitute trademark counterfeiting in violation of N.J. Stat. Ann. § 56:3-13.16 and reflect Defendants' intent to exploit the goodwill and strong brand recognition associated with the BTL Trademarks.

99.     Defendants have made and will continue to make substantial profits and/or gains to which it is not in law or equity entitled.

100.    Defendants intend to continue their infringing acts, unless restrained by this Court.

101.    Defendants' acts have damaged and will continue to damage BTL, and BTL has no adequate remedy at law.

## COUNT VI: UNFAIR COMPETITION UNDER THE NEW JERSEY TRADE NAMES, TRADE-MARKS AND UNFAIR TRADE PRACTICES ACT, N.J. STAT. ANN. § 56:4-1 *ET SEQ.*

102.    BTL repeats and re-alleges paragraphs 1–84 as if fully set forth herein.

103.    The acts of Defendants complained of herein in Counts II–V constitute deceptive and unfair trade practices in violation of N.J. Stat. Ann. § 56:4-1 *et seq.*

104.    Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell body-contouring services using the Accused Device constitutes deceptive and unfair trade practices in violation of N.J. Stat. Ann. § 56:4-1 *et seq.*

105.    Defendants' unauthorized, intentional, and willful representations are false and misleading and were done to deceive the consuming public in New Jersey and to capitalize on the goodwill developed by BTL.

106.    Defendants' use of the BTL Trademarks and confusingly similar variations thereof in connection with the marketing and sale of body-contouring services using the Accused Device constitutes unfair competition that is likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association with BTL or the origin, sponsorship, or

approval of the body-contouring services using the Accused Device by BTL. Defendants' deceptive actions are likely to influence the consuming public's purchasing decisions. Defendants' unfair competition jeopardizes the goodwill created by BTL in the BTL Trademarks.

107.    Despite their actual and constructive knowledge of BTL's use and rights in the BTL Trademarks, Defendants have continued to use the BTL Trademarks and confusingly similar variations thereof in association with the promotion, advertising, marketing, and/or sale of body-contouring services using the Accused Device without BTL's authorization or consent. Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill created by BTL in the BTL Trademarks.

108.    BTL has sustained injury, damage, and loss in New Jersey based on Defendants' actions. Defendants' actions directly or indirectly affected New Jersey.

109.    Defendants are liable for a violation of N.J. Stat. Ann. § 15:4-1 *et seq.*

110.    BTL is entitled to all relief available under this Section.

## COUNT VI: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

111.    BTL repeats and re-alleges paragraphs 1–84 as if fully set forth herein.

112.    This claim arises under the common law of the State of New Jersey.

113.    Defendants have engaged in unfair competition through their reliance and exploitation of consumer mistake and confusion, and its deliberate efforts to exploit the goodwill represented by the BTL Trademarks in connection with the marketing and sale of body-contouring services using the Accused Device.

114.    Defendants' aforementioned acts constitute trademark infringement and unfair competition in violation of New Jersey common law.

115.    As a proximate result of Defendants' actions, BTL has suffered and will continue to suffer damages.

116.    BTL has no adequate remedy at law and will continue to suffer irreparable harm unless Defendants are enjoined.

117.    By reason of Defendants' unlawful conduct as alleged above, BTL has been substantially injured and is entitled to damages and Defendants' profits attributable to their infringement, which are presently indeterminate, and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE BTL requests entry of judgment against Defendants as follows:

A.    A judgment that Defendants have infringed one or more claims of the Asserted Patent in violation of 35 U.S.C. § 271(a)–(c);

B.    An award of damages not less than $125,000 for infringement of the Asserted Patent, with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 35 U.S.C. § 284;

C.    A judgment that Defendants have willfully infringed one or more claims of the Asserted Patent;

D.    A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of BTL's reasonable attorneys' fees;

E.    An order permanently enjoining Defendants, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the Asserted Patent;

F.    A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1114, by committing acts of trademark infringement;

G.    A judgment that Defendants' use of the "HIFEM" mark, as alleged in this

Complaint, infringes BTL's HIFEM® trademark;

H.    A judgment that Defendants' use of the "EMShape" mark, as alleged in this Complaint, infringes BTL's EM® and EMSCULPT® trademarks;

I.    A judgment that Defendants' use of the "EMShape Neo" mark, as alleged in this Complaint, infringes BTL's EM® and EMSCULPT NEO® trademarks;

J.    A judgment that Defendants' use of the "EMShape NeoSculpt" mark, as alleged in this Complaint, infringes BTL's EM® and EMSCULPT NEO® trademarks;

K.    A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), by committing acts of federal unfair competition, false designation of origin, and false advertising;

L.    A judgment that Defendants have violated the New Jersey Trade Names, Trade-Marks and Unfair Trade Practices Act § 56:3-13.16;

M.    A judgment that Defendants have violated the New Jersey Trade Names, Trade-Marks and Unfair Trade Practices Act § 56:4-1 *et seq*.;

N.    A judgment that Defendants have violated New Jersey common law;

O.    An award of damages for Defendants' infringement of the BTL Trademarks, including Defendants' profits, any damages sustained by BTL, and the costs of the action as provided by 15 U.S.C. § 1117(a), with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 15 U.S.C. § 1117(b);

P.    A judgment that this case is "exceptional" under 15 U.S.C. § 1117(a) and an award of reasonable attorneys' fees;

Q.    A judgment that Defendants' conduct in violating the BTL Trademarks is willful and malicious;

R.    Alternatively, an award of statutory damages for Defendants' infringement of the

BTL HIFEM® Trademark in an amount of $200,000. That amount to be heightened to $2,000,000 in accordance with 15 U.S.C. § 1117(c)(2) for Defendants' willfulness;

S.    An award of damages against Defendants as a result of their wrongful acts against BTL in an amount to be proved at trial;

T.    An award of any and all of Defendants' profits arising from the foregoing acts;

U.    An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

V.    Permanent injunctive relief enjoining Defendants from:

    i.    using the BTL Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the promotion, marketing, advertising, offering for sale, or sale of any good or service that is not a good or service offered by a genuine BTL product, or is not authorized by BTL to be offered in connection with the BTL Trademarks;

    ii.    passing off, inducing, or enabling others to sell or pass off any good or service as a good or service offered by a genuine BTL product, or any other good or service offered by BTL, that is not BTL's or not offered under the authorization, control, or supervision of BTL and approved by BTL for sale under the BTL Trademarks;

    iii.    committing any acts calculated to cause consumers to believe that Defendants' goods or services are those sold under the authorization, control or supervision of BTL, or are sponsored by, approved by, or otherwise connected with BTL; and

    iv.    further infringing the BTL Trademarks and damaging BTL's goodwill.

W.       An award of BTL's costs and expenses in this action; and

X.       For such other relief as the Court may deem just and proper.

## **JURY DEMAND**

BTL hereby demands a trial by jury on all issues so triable.

Dated: New York, New York                                Respectfully submitted,
      May 23, 2025


  _/s/Olivera Medenica_
Olivera Medenica
Padmaja Chinta (*pro hac vice to be filed*)
omedenica@dunnington.com
pchinta@dunnington.com
Dunnington Bartholow & Miller LLP
230 Park Avenue, 21st Fl.
New York, New York 10169
Tel. (212) 682-8811

     - and -

Seth R. Ogden (*pro hac vice* to be filed)
sro@iplawgroup.com
Patterson Intellectual Property Law, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone: (615) 242-2400
Facsimile: (615) 242-2221

*Attorneys for Plaintiff BTL Industries, Inc.*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

The undersigned hereby certifies that the matter in controversy in this matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

/s/Olivera Medenica
Olivera Medenica